IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSS RICOBENE, | ) |
| Plaintiff, | ) Case No. 24-cv-01594 |
| v. | ) Judge John J. Tharp, Jr. |
| WILL COUNTY, and WILL COUNTY SHERIFF, | ) Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | ) JURY DEMANDED |

## AMENDED COMPLAINT

Plaintiff, ROSS RICOBENE, by and through his counsel, Timothy J Coffey of The Coffey Law Office, P.C., and pursuant to leave granted by Court (R. 16), states as and for his Amended Complaint against Defendants, WILL COUNTY and WILL COUNTY SHERIFF, as follows:

### Nature of Case

1. Plaintiff brings this action against Defendants to recover damages proximately caused by Defendant Will County Sheriff's (WCS's) discriminatory termination or constructive termination of his employment in violation of the Illinois Human Rights Act, as amended, 775 ILCS § 5/2-101 et seq. ("IHRA"), 42 U.S.C § 1981 ("Section 1981"), and the Fourteenth Amendment to the United States Constitution made enforceable through 42 U.S.C. § 1983 ("Section 1983").

### Jurisdiction and Venue

2. This Court has original jurisdiction over Plaintiff's Sections 1981 and 1983 claims under 28 U.S.C. §§ 1331, 1337, 1343.

1

3. This Court has supplemental jurisdiction over Plaintiff's IHRA claims pursuant to 28 U.S.C. 1367(a).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant WCS's illegal acts complained of herein took place at its offices and place of business located in Joliet, Illinois, Will County, within the geographical jurisdictional boundaries of this Court.

5. On or about August 8, 2023, Plaintiff filed a timely charge of illegal discriminatory job termination or constructive termination against Defendants in violation of the IHRA with the Illinois Department of Human Rights.

6. On November 28, 2023, the IDHR issued its Notice of Opt Out and Right to Sue, a copy of which is attached hereto. Plaintiff's initial Complaint was filed within 90 days of Plaintiff's receipt of the IDHR Right to Sue Notice.

**The Parties**

7. Plaintiff, ROSS RICOBENE (hereafter "Ross"), is individual of Italian descent, national origin, and ancestry residing at all relevant times in Will County, Illinois.

8. Defendant WCS was created by article VII, section 4, of the Illinois Constitution of 1970 (Ill. Const.1970, art. VII, § 4(c)). Under Illinois law, Defendant WCS is an independently elected county officer and is not an employee of the county in which the Sheriff serves. Ill. Const.1970, art. VII, § 4(c).

9. While employed in the position of Deputy Sheriff within the WCS's office, Ross was a statutory employee of Defendant WCS, who is authorized to appoint and hire deputies See 55 ILCS § 5/3–6008.

2

10. WCS employs in excess of 100 workers and is therefore an "employer" within the meaning of the IHRA.

11. Defendant, WILL COUNTY, is a unit of local government organized and existing under the color or law of the State of Illinois and operating and maintaining numerous public facilities and service offices and departments primarily in Joliet, Illinois. Defendant Will County is a properly named party Defendant hereto because it funds Defendant WCS and is therefore required to pay a judgment entered against Defendant WCS or any settlement entered into by WCS. Thus, under Federal Rule of Civil Procedure 19, Will County is a necessary party to this lawsuit which seeks damages from Defendant WCS.

**Facts Common to All Counts**

12. In December 2016, Ross started his WCS employment in the position of Deputy Sheriff in the WCS's office.

13. Ross' last position for WCS was Deputy Sheriff, Court Security Division.

14. Ross' job performance at all relevant times met or exceeded WCS's legitimate expectations.

15. On May 13, 2022, Ross was arrested by Plainfield, Illinois police and charged with driving under the influence in violation of 625 ILCS § 5/11-501(a)(2).

16. Ross' arrest was publicized by local media outlets.

17. On February 14, 2023, following a bench trial in the Circuit Court for the 12th Judicial Circuit, Will County Illinois, Ross was found not guilty of the charge.

18. On May 5, 2023, Ross' request for expungement was granted by a judge in the Circuit Court for the 12th Judicial Circuit, Will County Illinois, and the arrest and related records were expunged.

19. Following his May 2022 arrest, Ross was called a "dumb dago" multiple times by a superior WCS's officer, Lieutenant Omicienski, related to the DUI arrest. Ross was also told repeatedly by superior officers and supervisors that the arrest was an embarrassment to the WCS's office. The Sheriff "Mike Kelley" was in an election in November 2022.

20. Lieutenant Omicienski called Ross a "dumb dago" as recent as October 2022 when Ross called a twin brother the wrong name in the courthouse. Ross inaccurately congratulated Sergeant Jeremy Zdnicki on being promoted to Commander, when his twin brother James Zdnicki was actually promoted.

21. On numerous occasions at work and while on duty, Ross was also referred to as "Henry Hill" (a reference to an actual alleged Italian mobster portrayed by actor Ray Liotta in the movie "Good Fellas"). In another related incident, a fake line of cocaine was left on Ross' work desk -- another derogatory reference to Henry Hill/Good Fellas and Ross' Italian heritage.

22. Also, following Ross' arrest, the arrest and subsequent internal affairs investigation was shared and spread throughout the entire WCS's office.

23. In June 2022, while at work at a WCS facility located on Laraway Road, Joliet, Illinois, WCS Internal Affairs Sergeant James Zdnicki called Ross a "dumb dago" and ridiculed him in front of other Detectives (Detective Hillary Lithgow, Detective Robert

4

Austin, Detective Paul Reyes all witnessed this). Sergeant Zdnicki asked Ross if he knew where he was or if he was on "ambien." Ross's doctor had in fact prescribed ambien for him after diagnosing Ross with sleep deprivation caused by switching work from midnights to the day shift.

24. Ross did not report the aforementioned offensive, demeaning and humiliating statements, acts and references to his Italian heritage to WCS's human resources because they were made by superior officers and Ross reasonably feared retaliation including up to pretextual termination particularly following his DUI arrest.

25. On November 4, 2022, was unable to attend a class that he was assigned to attend. That morning, two WCS supervisors, Lt. Omicienski and Sergeant Corsi, showed up at Ross' residence in Plainfield, Illinois, broke into his home after no one answered, and searched his entire home, including drawers and medicine cabinets. Lt. Omicienski and Sgt. Corsi detained Ross' girlfriend, interrogated her, told her Ross was not in trouble and that they were worried about Ross.

26. Later that morning, Lt. Omicienski and Sgt. Corsi continued to pursue Ross and located him at a bar/restaurant in Lemont, Illinois, where Ross was eating and watching sports.

27. Lt. Omicienski and Sgt. Corsi then forcibly removed Ross from the establishment and forced him into the back of Omicienski's squad car, where they locked him in the back seat of the squad car. They repeatedly berated and yelled at Ross and Lt. Omicienski took Ross' badge and credentials. They told Ross that he was suspected of domestic battery. Ross denied the allegation. They then ordered Ross to submit to a

drug and alcohol evaluation. Ross refused and requested that they take him home. Lt. Omicienski then immediately said, "Ricobene just resigned." They then drove Ross to his residence in Plainfield from Lemont while he was locked in the back of a squad car. They also took possession of the remainder of Ross' police equipment.

28. At no time on November 4, 2022, or any other day did Ross notify WCS that he resigned. Ross never quit his WCS job, and never signed or submitted to WCS anything pertaining to a resignation.

29. Ross applied for and received unemployment compensation while he was unemployed following the November 4, 2022 incident.

30. Ross attempted to file a grievance through his union, Fraternal Order of Police, Lodge 94, and, within days of the November 4, 2022, incident, he signed a grievance.

31. Ross was informed by the FOP that if he contested the alleged "resignation," WCS would terminate his employment. Based in part on guidance from the FOP along with his intent and desire to apply for other law enforcement positions, Ross elected not to contest the false "resignation."

32. Ross was later advised that WCS filed a misconduct report with the Illinois Training and Standards Board.

33. The WCS report contained false information about the events of November 4, 2022.

34. Ross immediately attempted to request through FOIA body camera, squad camera footage and other records from WCS pertaining to the November 4, 2022, incident.

35. WCS refused to produce to Ross any video from the incident.

36. Any claim by WCS that Ross resigned is untrue and was used by WCS as a pretext to hide its true illegal discriminatory motive.

### Count I: Arrest Record Discrimination in Violation of the IHRA

37. Ross restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 36, above.

38. The IHRA makes it illegal for an employer such as WCS to inquire into or use an arrest record concerning an employee such as Ross as a basis to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment. See 775 ILCS § 5/2-103.

39. WCS took the above-described actions against Ross including terminating or constructively terminating his employment based on its inquiry into and/or use of his arrent record in violation of the IHRA.

40. WCS has treated similarly situated employees who had no arrest record more favorably than Ross and did not terminate or constructively terminate their respective employment after becoming aware that they allegedly engaged in as serious or more serious misconduct, work rule violations and/or illegal activity.

41. As a direct and proximate result of WCS's illegal arrest record discrimination as described above, Ross has lost, and is expected to continue to lose, income in the form of wages and retirement and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

**Count II: National Origin and Ancestry Discrimination in Violation of the IHRA**

42. Ross restates and fully incorporates into Count II his allegations set forth in Paragraphs 1 through 36, above.

43. The IHRA makes it illegal for an employer such as WCS to refuse to hire, to segregate, to harass, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment based on an employee's national origin or ancestry. See 775 ILCS § 5/2-102.

44. WCS took the above-described actions against Ross including terminating or constructively terminating his employment based on Ross' Italian national origin and/or ancestry.

45. WCS has treated similarly situated employees who are not of Italian national origin and/or ancestry more favorably than Ross and did not terminate or constructively terminate their respective employment after becoming aware that they allegedly engaged in as serious or more serious misconduct, work rule violations and/or illegal activity.

46. As a direct and proximate result of WCS's national origin and/or ancestry discrimination as described above, Ross has lost, and is expected to continue to lose, income in the form of wages and retirement and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### Count III: National Origin and Ancestry Discrimination in Violation of Sections 1981 and 1983

47. Ross restates and fully incorporates into Count III his allegations set forth in Paragraphs 1 through 36, above.

48. Section 1981 makes it unlawful for an employer such as WCS to discriminate against any person in the terms and privileges of employment, or to take any adverse action against an employee because of his or her national origin and/or ancestry.

49. Ross had a constitutionally protected right to be free of national origin and/or ancestry discrimination under the equal protection clause of the Fourteenth Amendment to the United States Constitution made enforceable through Section 1983.

50. WCS, acting under the color of law, took the above-described actions against Ross including terminating or constructively terminating his employment because of his national origin and/or ancestry in violation of his constitutional rights made actionable pursuant to Sections 1981 and 1983.

51. WCS has treated similarly situated employees who are not of Italian national origin and/or ancestry more favorably than Ross and did not terminate or constructively terminate their respective employment after becoming aware that they allegedly engaged in as serious or more serious misconduct, work rule violations and/or illegal activity.

52. As a direct and proximate result of WCS's national origin and/or ancestry discrimination as described above, Ross has lost, and is expected to continue to lose, income in the form of wages and retirement and other benefits in a sum to be proven at trial, and has suffered emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### Count IV: Indemnification v. Defendant Will County

53. Ross restates and fully incorporates into Count IV his allegations set forth in Paragraphs 1 through 36, above.

54. Illinois law requires Defendant Will County to pay any judgment or settlement for compensatory damages against Defendant WCS related to any one or more of the claims set forth above.

### Prayer for Relief Common to all Counts

**Wherefore,** Plaintiff, ROSS RICOBENE, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, WILL COUNTY SHERIFF, as follows:

A. Order Defendant WCS to make Ross whole by paying him appropriate back pay and reimbursement for lost pension and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B. Order Defendant WCS to immediately reinstate Ross to his former position or a comparable one; or, in the alternative, order Defendant WCS to pay Ross an appropriate amount of front pay;

C. Order Defendant WCS to pay Ross compensatory damages in the maximum amount allowable under the law;

D. Order Defendant WCS to pay Ross' costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

  E. Order Defendant Will County to pay any judgment entered against Defendant WCS.

  F. Try all issues of fact to a jury; and,

  G. Grant such other relief as the Court deems just.

      Respectfully submitted,
      Plaintiff, ROSS RICOBENE,


    By:  /s/ Timothy J. Coffey
      Timothy J. Coffey, Esq.
      THE COFFEY LAW OFFICE, P.C.
      Attorneys for ROSS RICOBENE
      118 N. Clinton Street, Suite 125
      Chicago, IL 60661
      (312) 627-9700
      tcoffey@worker-law.com