**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSS RICOBENE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-CV-01594 |
| | ) | |
| WILL COUNTY, WILL COUNTY | ) | Judge John J. Tharp, Jr. |
| SHERIFF | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

The defendant's motion to dismiss [21] is granted, for the reasons explained in the following Statement. The plaintiff is granted leave to amend his complaint by May 11, 2026. The motion pursuant to LR 78.5 [28] is denied as moot.

## <u>STATEMENT</u>

### I.    Background

The plaintiff, Ross Ricobene, was employed as a Deputy Sheriff by defendant Will County Sheriff ("WCS"). Am. Compl. 2 ¶ 9, ECF No. 17. While in WCS's employ, Ricobene was arrested for driving under the influence. *Id.* at 3 ¶ 15. Ricobene was found not guilty and his arrest record was expunged. *Id.* at 3–4 ¶¶ 17–18. After his arrest, a number of his superior officers used an ethnic slur for Italians to refer to Ricobene (who is of Italian descent). *Id.* at 2 ¶ 7; *id.* at 4 ¶¶ 19, 20, 23; *id.* at 5 ¶ 24. They also referred to him as "Henry Hill" (an Italian mobster in the movie *Goodfellas*) and left a fake line of cocaine on his work desk (in apparently another reference to the movie). *Id.* at 4 ¶ 21.

On November 4, 2022, Ricobene failed to show up to a class he was assigned to attend. *Id.* at 5 ¶ 25. He alleges that two of his supervisors then broke into his home, conducted a search, and detained his girlfriend to ask where he was. *Id.* at 5 ¶ 25. Then, he says, those same supervisors found him in a bar later that morning "eating and watching sports." *Id.* at 5 ¶ 26. The officers then put Ricobene in the backseat of their squad car, yelled at him, accused him of domestic battery, and ordered him to submit to a drug and alcohol test. *Id.* at 5–6 ¶ 27. When he refused, one of them said "Ricobene just resigned," and the officers confiscated his police equipment. *Id.* Despite maintaining that he did not resign, Ricobene decided not to challenge the alleged "resignation" because he was concerned about being terminated and the impact that it could have on securing a future law enforcement position. *Id.* at 6 ¶ 28, 31.

Ricobene alleges that despite always meeting or exceeding WCS's legitimate expectations with respect to his job performance, *id.* at 3 ¶ 14, his fellow officers discriminated against him for

two reasons: first, his Italian heritage, and second, his 2022 arrest for driving under the influence. *Id.* at 7 ¶ 39; 8 ¶ 44. He argues that he is entitled to relief under the Illinois Human Rights Act ("IHRA") for arrest record, national origin, and ancestry discrimination, as well as under the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 for national origin and ancestry discrimination.[1] The defendants, Will County and Will County Sheriff, moved to dismiss the complaint.

## II. Discussion

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the pleaded facts as true and draws all reasonable inferences in Allen's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

### A. Section 1981 and 1983

Defendants first argue that Section 1981 does not provide a cause of action against state actors like WCS and Will County. Mot. Dismiss Mem. 3, ECF No. 22. They cite to *De v. City of Chicago*, 912 F. Supp. 2d 709, 725–30 (N.D. Ill. 2012), where the court explained that "§ 1981 standing alone does not create a cause of action against municipalities." *Id.* at 730. While that is correct as a statement of law, *see Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 671 (7th Cir. 2014), Ricobene does not bring a § 1981 claim standing alone. Rather, he brings it under § 1983, which provides a private right of action against those acting under color of law who "subject[], or cause[] to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ***and laws***." 42 U.S.C. § 1983 (emphasis added). Certain federal laws give rise to private rights enforceable through § 1983, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002), and the Supreme Court has said that § 1981 is one such law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Critically, in *De*, the plaintiff failed to frame his claim under § 1983, distinguishing it from the case at hand, and prompting the award of summary judgment on behalf of the City. *De*, 912 F. Supp. 2d at 730.

Ricobene pled his claim under § 1983, allowing him to bring this action for violations of both § 1981 and the Equal Protection clause of the Fourteenth Amendment. The complaint does not make clear, however, whether Ricobene is suing the Sheriff in his personal or official capacity. Section 1983 defendants can be sued in their personal capacity (for their own actions taken under color of state law), or in their official capacity (against the entity of which the officer is an agent). *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). The Court considers each in turn.

---

[1] The defendants, noting that Ricobene's complaint includes language often found in the Title VII context, maintain that a Title VII theory would fail because he does not have a right to sue letter from the Equal Employment Opportunity Commission. Mot. Dismiss Mem. 5–6, ECF No. 22. Though the complaint does not purport to claim relief under Title VII, the Court agrees that the complaint could not sustain such a theory. *Anderson v. United Airlines, Inc.*, 140 F.4th 385, 390 (7th Cir. 2025) ("A complaint may be deficient and subject to dismissal if the plaintiff lacks a right-to-sue letter." (citation modified)).

### i. Personal Capacity

As explained above, a personal capacity suit is one for a defendant's own actions. But the complaint does not allege that the Will County Sheriff, Mike Kelley, actually did anything. Ricobene does not allege that Kelley was present for any of the events described in the complaint. Nor does he allege that Kelley was even aware of any of them. He does not allege that Kelley personally took part in any discriminatory acts or used discriminatory language. Accordingly, Ricobene fails to state a claim against Kelley in his personal capacity.

### ii. Official Capacity

An official capacity suit against Kelley is a suit against the entity for which he is an agent, the Will County Sheriff's Office. Local state entities can be liable for constitutional violations pursuant the Supreme Court's decision in *Monell v. Department of Social Services*. 436 U.S. 658 (1978). Because § 1983 is the "***exclusive*** federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor," *Jett*, 491 U.S. 701, 735 (emphasis added), a plaintiff must show that the deprivation of his rights under § 1981 (and, for that matter, the Fourteenth Amendment) "was caused by a custom or policy within the meaning of *Monell* and subsequent cases." *Id.* at 736. *Monell* requires a plaintiff to "trace [her] deprivation to some municipal action (*i.e.*, a 'policy or custom'), such that the challenged conduct is 'properly attributable to the municipality itself.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (citation omitted).

A plaintiff can show municipal action of at least the following three kinds: (1) an express policy that causes a constitutional deprivation when enforced; (2) a custom that is persistent and widespread, so that it is the municipality's standard operating procedure; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See* 7th Cir. Pattern Instruction 7.24; *see also, e.g.*, *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022) ("Municipal action giving rise to § 1983 liability may take the form of: (1) an express policy, (2) a widespread practice or custom, or (3) action by one with final policymaking authority.").

Ricobene's response clarifies that he is alleging a widespread custom of discrimination as well as action by Kelley, who had final policymaking authority. Resp. 1–4, ECF No. 24. Starting with the latter, and as explained above, the complaint alleges no action by Kelley. Ricobene argues that he "explicitly alleged [t]hat WCS Kelley, acting under the color of law, took the above-described actions against him including terminating or constructively terminating his employment because of his national origin and/or ancestry," citing his complaint at paragraph 52. But that portion of the complaint merely alleges that "[a]s a direct and proximate result of WCS's national origin and/or ancestry discrimination as described above, Ross has lost, and is expected to continue to lose, income in the form of wages." Am. Compl. 10 ¶ 52. And as previously discussed, none of the discrimination described in the complaint was committed by Kelley himself. The response additionally says that Kelley "decid[ed] to issue and through command staff deliver the resign or be fired ultimatum to Ross," Resp. 3, but again, those allegations also do not appear in the complaint.

Moving to the argument that there was a widespread custom of discrimination within the WCS, Ricobene points to the fact that his complaint alleges a number of "harassing statements and

comments" and that the harassment occurred at the same time Kelley was running for re-election. *Id.* at 2–3. The Seventh Circuit has provided guidance to lower courts on the requirements to adequately plead municipal action. In *Thomas v. Neenah Joint School District*, the plaintiff alleged that the defendant school district had "an uncodified common practice of violating the Fourth Amendment rights of students with disabilities." 74 F.4th 521, 524 (7th Cir. 2023). To bolster that claim, the plaintiff alleged three separate incidents and comments suggesting that school officials behaved improperly toward students with disabilities. *Id.* The Seventh Circuit said that was not enough to "permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id.* (citing *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)). The plaintiff here pled even fewer facts supporting the contention that there existed a widespread policy; he merely describes "a few sporadic examples of an improper behavior." *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021); *see also Allen v. Bd. of Trs. Rock Valley Coll.*, No. 19-cv-05465, 2021 WL 4034067, at *6 (N.D. Ill. Sept. 3, 2021) ("An alleged discriminatory practice . . . cannot reasonably be described as 'widespread' if it affects only one person.").

Ricobene asks this Court to look to *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), in which the Seventh Circuit explained that the plaintiff "was not required to identify every other or even one other individual who had been" subject to an allegedly widespread practice of the Chicago Police Department. *Id.* at 844. But *White* is distinguishable: the allegation of a municipal practice there was underpinned by the existence of a "standard printed form" from which one could draw the inference that the deprivation complained of was a standard practice. *Id.* No such department-wide form or the like was alleged here.

Because the plaintiff's complaint does not contain sufficient factual allegations to draw the reasonable inference that the Will County Sheriff's Office had any of the widespread practices the plaintiff alleges, he has not stated a claim against Kelley in Kelley's official capacity.

### B. Illinois Human Rights Act

Ricobene brings his remaining claims under the Illinois Human Rights Act, invoking this Court's supplemental jurisdiction. Because this Court is dismissing the only claim over which it has federal jurisdiction, it declines to exercise supplemental jurisdiction over this one. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction.").

4

\*     \*     \*

Sheriff Kelley is entitled to dismissal of the claims against him because the complaint does not allege that he was personally involved in the alleged harassment and discrimination, nor does the plaintiff adequately allege that the Will County Sheriff's office had a widespread practice constituting a de facto policy of discrimination. For that reason, Will County is also entitled to dismissal; as the plaintiff notes, he only sued Will County as an indemnitor for WCS. The plaintiff, however, is granted leave to amend his complaint by May 11, 2026.

Date: April 24, 2026

John J. Tharp, Jr.
United States District Judge

5